BARBOUR, District Judge:
The Secretary of the Department of Public Safety and Corrections and the Treasurer of the State of Louisiana bring this appeal to challenge the Order of the district court which granted a preliminary injunction in favor of Appellees and thereby halted the implementation of Louisiana Revised Statute 47:463.61, which authorizes a prestige license plate bearing a “Choose Life” message. We find that the Appellees lacked standing to challenge the constitutionality of La.Rev.Stat. 47:463.61. We therefore reverse the district court, vacate its preliminary injunction and remand with instruction to dismiss the complaint.
I.
The Plaintiff-Appellees, Russell J. Henderson, Doreen Keeler, Robert H. Lo-ewy, and Greater New Orleans Section of the National Counsel of Jewish Women (“NCJW”)[2] instituted this suit against the Secretary of the Department of Public Safety and Corrections and the Treasurer *377 of the State of Louisiana, seeking a declaration that La.Rev.Stat. 47:463.61 is unconstitutional and an injunction prohibiting its enforcement. The challenged law established a “Choose Life” automobile license plate for private automobiles, provided there are a minimum of one hundred applicants for the plate. The annual fee for the Choose Life plate is $25.00 which is paid in addition to the usual yearly motor vehicle licensing fee. An additional $3.50 handling fee is charged to offset administrative costs.
Under the statute, the $25.00 fee will be deposited into the state treasury and thereafter distributed based on recommendations of the “Choose Life” Advisory Council (“Council”). The Council, comprised of the president or designee of the American Family Association, the Louisiana Family Forum, and the Concerned Women of America organizations, is responsible for reviewing grant applications and making recommendations with regard to the manner in which funds should be distributed. Distribution of the funds generated by the Choose Life license plate must be made to tax-exempt organizations which provide “counseling and other services intended to meet the needs of expectant mothers considering adoption for their unborn child” or “to meet the needs of infants awaiting placement with adoptive parents.” Organizations “involved in, or associated with counseling for, or referrals to, abortion clinics, providing abortion-related procedures, or pro-abortion advertising” are disqualified from receiving funds generated by the Choose Life plate.
Plaintiffs filed a lawsuit challenging the constitutionality of La.Rev.Stat. 47:463.61 in the United States District Court of the Eastern District of Louisiana. Specifically, they allege that the subject statute abrogates their right to free speech, constitutes an impermissible establishment of religion, and denies them their right to due process in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs sought a declaratory judgment that La.Rev.Stat. 47:463.61 is unconstitutional and' an injunction against its enforcement. On August 23, 2000, a hearing on the Motion for Preliminary Injunction was held before United States District Judge Stanwood R. Duval, Jr. In the Order and Reasons, entered on August 29, 2000, the district court found that the plaintiffs had failed to show that a preliminary injunction should issue with regard to their Establishment Clause claim. The district court, however, found that the plaintiffs established a likelihood of success on the merits of their free speech claim.
Before the district court, plaintiffs argued that La.Rev.Stat. § 47:463.61 violates the First Amendment to the United States Constitution because it discriminates based on viewpoint by allowing only the “pro-life” viewpoint to be expressed via special license plates and pro-choice car owners are not given the option of expressing their view on their license plates. Defendants argued that the Choose Life license plate constitutes an expression of “state speech” and, therefore, did not create a forum for private speech. The district court rejected the argument of the defendants. The district court concluded that prestige license plates are “speech” for the purpose of First Amendment analysis and that they constitute a non-public forum thereby requiring the State to maintain view-point neutrality with regard to the messages displayed. The district court then concluded that as “the State has taken the position that [the ‘Choose Life’] message is its own ... it appears at this juncture that the State fails in its responsibility to provide a viewpoint-neutral forum, and [La.Rev.Stat. 47:463.61] will probably be found to be an unconstitutional violation *378 of the First Amendment right to free speech.”[3]
The district court also rejected the defenses raised by the defendants. In deciding the merits of defendants’ ripeness argument, the court found that the case was ripe for adjudication as the State, by statutorily authorizing the display of prestige license plates, had created a non-public forum which allowed for viewpoint discrimination. On the defense of standing, the district court did not focus its analysis on whether plaintiffs had established standing to challenge the constitutionality of the Choose Life statute. Instead, the court held that: “Once free speech has been abridged in such a manner, there is no case law supporting the proposition that those individuals whose speech has been restrained in this particular forum must wait ... to have an opportunity to express an opposing viewpoint in that forum.”[4] As such, the court concluded it unlikely that the defenses raised by the defendants would be recognized.
The district court, having concluded that the plaintiffs had established a likelihood of success on the merits of their free speech claim and that it was unlikely that the defenses raised were cognizable, granted a preliminary injunction thereby (1) enjoining the enforcement and implementation of La.Rev.Stat. § 47:463.61 and (2) halting production of the Choose Life license plate. Defendants appeal from the order granting the preliminary injunction.
II.

Standing

Under the dictates of Article III of the United States Constitution, federal courts are confined to adjudicating actual “cases” and “controversies.” U.S. Const. art. Ill, § 2, cl. 1. Of the doctrines that have evolved under Article III, including standing, mootness, ripeness, and political question, the requirement that the litigant have standing is perhaps the most important. See Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). This doctrine:
[E]mbraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked.
Id. 468 U.S. at 741, 104 S.Ct. 3315, 82 L.Ed.2d 556 (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982)). Standing, at its “irreducible constitutional minimum,” requires a plaintiff “to demonstrate: they have suffered an ‘injury in fact’; the injury is ‘fairly traceable’ to the defendant’s actions; and the injury will ‘likely ... be redressed by a favorable decision.’” Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir.2001) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). “[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Lujan, 504 U.S. at 560, 112 S.Ct. at 2136.
In the case sub judice, the plaintiffs allege different injuries all of which they *379 contend arise because of the enactment of the Choose Life statute. It is on these injuries that standing must be predicated. We now consider whether any of the plaintiffs have alleged an injury in fact, which is fairly traceable to the Choose Life statute that will be redressed in the event that statute is enjoined and/or declared unconstitutional.[5] We will discuss each basis for standing separately.

1. Taxpayer Standing

Plaintiffs Henderson, Keeler, Lo-ewy, and LaMothe, all of whom allege that they pay income tax to the State of Louisiana, allege injury based on the use of their tax money (1) to make and distribute the Choose Life license plate and (2) for the administration of the Choose Life statute including the establishment and maintenance of the Choose Life Council and Fund. The United States Supreme Court has held that state taxpayers, like federal taxpayers, ordinarily lack a sufficient personal stake to challenge laws of general applicability, since their own injury is not distinct from that suffered by taxpayers in general. ASARCO Inc. v. Kadish, 490 U.S. 605, 614, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989) (plurality opinion) (citing Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). Therefore, in cases in which a state taxpayer challenges the constitutionality of a state law, he “must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, not merely that he suffered in some indefinite way in common with people generally.” Doremus v. Board of Educ. of Hawthorne, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952).
In the case sub judice, the state taxpayer plaintiffs first allege injury in the form of the use of their state income tax dollars to manufacture and distribute the Choose Life license plate. We find that this allegation is insufficient for standing purposes as it does not show that the state taxpayer plaintiffs have sustained or will sustain a direct pecuniary injury, i.e. an injury in fact, because of the manufacture or distribution of the Choose Life license plate. This conclusion is predicated, in part, on the fact that there is no suggestion that the prestige license plates cost more for the State to manufacture or distribute to motor vehicle drivers than do non-prestige license plates. Second, motorists who elect to use the Choose Life license plate are required to pay the regular motor vehicle license fee when registering their vehicles and an additional charge of $3.50 to offset the administrative costs associated with the issuance of the prestige license plates. See La.Rev.Stat. § 47:463(A)(3) (requiring payment of $3.50 handling charge to “offset the administrative costs of the department for the issuance of [prestige license] plates.”). Third, the state taxpayer plaintiffs have not alleged that the amount they pay to the State in the form of income taxes will increase because of the enactment of La. Rev.Stat. § 47:463.61. We conclude that the injury complained of by the state taxpayer plaintiffs, i.e., the use of tax dollars to manufacture and/or distribute the Choose Life license plate, is insufficient to *380 confer standing as the injury complained of is, at best, speculative and, at most, constitutes a generalized grievance common to all tax payers in the state.
The state taxpayer plaintiffs also allege injury based on the use of their tax dollars to administer the provisions of La.Rev. Stat. § 47:463.61, which require the establishment and maintenance of the attendant Choose Life Council and Fund. This “injury” must be read in conjunction with the allegations of plaintiffs Loewy, LaMothe, and Greater New Orleans Section of the National Council of Jewish Women (“NCJW”) which allege that the Choose Life statute impermissibly advances Christian fundamentalism. In this context, it appears that the injury complained of by the state taxpayer plaintiffs arises because of alleged use of their state income tax dollars to administer a statute which violates the Establishment Clause.
Plaintiffs Loewy, LaMothe, and the NCJW allege that they will be injured by the implementation of La.Rev.Stat. 47:463.61 as that statute harms their religious beliefs and/or principles and endorses Christian fundamentalism. In support of this assertion, these plaintiffs argue that the mandatory members of the Choose Life Council belong to organizations, namely the American Family Association, the Louisiana Family Forum, and the Concerned Women for America, all of which allegedly espouse a belief in Christianity as evidenced by statements contained on their respective internet web sites.
We have consistently recognized that the injury alleged by a plaintiff for standing purposes must be “ ‘concrete and particularized and ... actual or imminent, not conjectural or hypothetical’ to pass constitutional muster.” Association of
Cmty. Orgs. for Reform v. Fowler, 178 F.3d 350, 358 (5th Cir.1999) (quoting Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136). We find the Establishment Clause challenge by Loewy, LaMothe, and the NCJW is predicated on an injury based in conjecture and, therefore, insufficient for federal standing purposes. The argument advanced by these plaintiffs is that because the Choose Life Council is to be comprised of individuals who belong to organizations that allegedly espouse Christian ideologies, the actions taken by the Council, presumably with regard to the manner in which the Choose Life Fund is distributed, will either advance Christianity or will otherwise interfere with their own religious beliefs or principles. There is, however, no allegation that the mandatory members of the Council have yet distributed any money from the Choose Life Fund or that in so doing, or contemplating distributions, they have actually advanced the religious ideologies of their respective organizations or religion in general. At best, the focus of the alleged injury complained of by these plaintiffs arises because of an appearance of future impropriety, which we have found insufficient to confer standing. Bomer, 274 F.3d at 218. Accordingly, we find that plaintiffs Loewy, LaMothe and NCJW, in alleging injury based on the manner in which the Choose Life statute would be administered, have failed to allege “an injury in fact” and, therefore, lack standing to challenge the facial constitutionality of that statute.[6] We turn now to the complained of injury to the state taxpayer plaintiffs.
The state taxpayer plaintiffs allege that they will be injured by the use of their income tax dollars to administer the provisions of the Choose Life statute. We have held that to establish taxpayer standing to *381 challenge the constitutionality of a state statute on the basis of the Establishment Clause, a party must show that “tax revenues are expended on the disputed practice.” Doe v. Duncanville Ind. Sch. Dist., 70 F.3d 402, 408 (5th Cir.1995).[7] The terms of the Choose Life statute contradict the plaintiffs’ allegation that state income tax dollars would be used for the administration of either the Choose Life Council or the Choose Life Fund. Under the statute, members of the Council serve on a voluntary basis and are not provided “compensation or reimbursement of any type.” La.Rev.Stat. § 47:463.61(E)(1). Additionally, the statute requires the payment of an additional $3.50 fee, in addition to the regular motor vehicle license fees, to offset a portion of the associated administrative costs. Id. at § 47:463.61(C). Under these facts, we find that the complained of injury of the state taxpayer plaintiffs, i.e., use of their income tax dollars to administer the Choose Life statute, is insupportable and, therefore, insufficient to confer standing to challenge the constitutionality of that statute.

2. Individual Standing

Plaintiff Keeler alleges injury based on the enactment of La.Rev.Stat. 47:463.61 in that “there is no similar ‘Pro-Choice’ prestige license plate to allow her to express her pro-choice view on her passenger car license plate.”[8] We find that this alleged injury fails under the third requirement for federal standing purposes.
To establish standing to challenge the constitutionality of a statute, a plaintiff must show that the injury about which he complains will “likely ... be redressed by a favorable decision” of the court. Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136. The injury complained of by Keeler is that she has been denied the opportunity to express her pro-choice point of view. The relief requested by Keeler is a declaratory judgment that La.Rev.Stat. § 47:463.61 is unconstitutional. We find that even if the Choose Life statute is declared unconstitutional, Keeler’s complained of injury would not be redressed as that remedy will not provide Keeler a forum in which to express her pro-choice viewpoint. Instead, the requested relief would merely function to prevent, other motor vehicle drivers from expressing their choose-life point of view. As we conclude that Keeler’s complained of injury cannot be redressed by a declaration of the court that the Choose Life statute is unconstitutional, we find that she does not have standing to challenge the constitutionality of that statute.

3. Organizational Standing

Plaintiff Planned Parenthood of Louisiana (“PPL”) alleges that La.Rev. Stat. 47:463.61 violates its right to speak and to due process of the law in violation of the First and Fourteenth Amendments to the United States Constitution. The injury complained of by this organization is that, by the language of the Choose Life Statute, it is ineligible for grants through the Choose Life Fund because it makes referrals to abortion clinics and engages in pro-choice advertising.
“An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals.” Fowler, 178 F.3d at 356 (citing Havens *382 Realty Corp. v. Coleman, 455 U.S. 863, 378-79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982)). We find that PPL fails to satisfy the redressibility requirement of Article III standing. The injury complained of by PPL arises from its alleged exclusion from eligibility to receive grants from the Choose Life Fund because it engages in abortion-related activities. The relief requested by PPL in federal court is a declaratory judgment that La.Rev.Stat. § 47:463.61 is unconstitutional. We find that even if the Choose Life statute is declared unconstitutional, the injury complained of by PPL would not be redressed because there would then be no fund from which PPL could seek grants. As we conclude that the injury complained of by PPL would not be redressed by a judicial declaration that La.Rev.Stat. § 47:463.61 is unconstitutional, we find that PPL has not established that it has standing to challenge that statute.
III.
We hold that the plaintiffs in this case have not shown that they have standing to challenge the constitutionality of Louisiana Rev. Stat. § 47:463.61. We therefore find that the preliminary injunction granted by the district court judge must be dismissed for lack of federal court jurisdiction under Article III of the United States Constitution.
The judgment of the district court is REVERSED, VACATED, and REMANDED for an entry of dismissal.

Appendix A

Louisiana Revised Statute 47:463.61 provides:
A.The secretary of the Department of Public Safety and Corrections shall establish a special prestige license plate to be known as the “CHOOSE LIFE” plate, provided there be a minimum of one hundred applicants for such plate.' The license plate shall be restricted to passenger cars, pickup trucks, vans, and recreational vehicles. The license plate shall be of a color and design selected by the Choose Life Advisory Council provided it is in compliance with R.S. 47:463(A)(3), and shall bear the legend “Choose Life”.
B. The prestige license plate shall be issued, upon application, to any citizen of Louisiana in the same manner as any other motor vehicle license plate.
C. The annual fee for this special prestige license plate shall be twenty-five dollars, in addition to the regular motor vehicle license fee provided in R.S. 47:463, to be distributed in the manner set forth in Subsection F of this Section and a three dollar and fifty cent handling fee to be retained by the department to offset a portion of administrative costs.
D. The department shall collect the fee for the prestige license plate and forward the fee to the state treasurer for immediate deposit on the state treasury.
E. (1) A Choose Life Advisory Council, hereinafter referred to as the “Council”, shall be established to design and review grant applications for qualifying organizations, and shall make recommendations regarding the awarding of grants to the state treasurer. Members of the Council shall serve one-year terms, on a voluntary basis, commencing on October 1, 1999, and shall receive no compensation or reimbursement of any type. Council members are hereby authorized to serve successive terms. The Council shall meet at least annually, and shall be comprised of the following members:
(a) The president, or his designee, from the American Family Association.
*383 (b) The president, or his designee from the Louisiana Family Forum.
(c) The president, or his designee, from the Concerned Women for America organization.
(2) At the discretion of the Council, membership may be extended to add members representing the following:
(a) Physicians specializing in obstetrics.
(b) Physicians specializing in pediatrics.
(c) Women who have surrender children for adoption.
(d) Couples who have adopted children.
(e) Adoption advocacy groups.
(f) Board-certified social workers.
(g) Certified counselors.
F. (1) After compliance with the requirements of Article VII, Section 9(B) of the Constitution of Louisiana relative to the Bond Security and Redemption Fund, an amount equal to the monies received by the state treasury pursuant to provisions of Subsection D of this Section shall be deposited into the Choose Life Fund, which is hereby created as a special fund in the state treasury and hereafter referred to as the “Fund”. All unexpected and unencumbered monies in the fund at the end of the fiscal year shall remain in the fund. Monies in the fund shall be invested by the state treasurer in the same manner as monies in the state general fund and interest earned on the investment of such monies shall be deposited into the fund. Monies in the fund shall only be withdrawn pursuant to an appropriation by the legislature solely for the purposes provided by this Section.
(2) An organization wishing to qualify for receipt of funds shall submit an affidavit affirming its qualifications, which shall include a pledge to spend the money in accordance with the provisions of this Section, to the Council and shall qualify as tax exempt under Section 501(c)(3) of the Internal revenue Code of 1954, as amended. Furthermore, an organization wishing to qualify for receipt of funds shall demonstrate it provides counseling and other services intended to meet the needs of expectant mothers considering adoption for their unborn child. No monies deposited into the fund shall be distributed to any organization involved in, or associated with counseling for, or referrals to, abortion clinics, providing medical abortion-related procedures, or pro-abortion advertising.
(3) Organizations receiving monies under this Section shall use at least fifty percent of such funds to provide for the material needs of expectant mothers considering adoption for their unborn child, including clothing, housing, medical care, food, utilities, and transportation. Such monies may also be used to meet the needs of infants awaiting placement with adoptive parents. The remaining funds may be used for counseling, training, and providing pregnancy testing, but shall not be used for administrative, legal, or capital expenditures. G. The state treasurer, based on the recommendations of the Council, shall annually disburse from the funds an equal amount to each of the qualifying organizations, and shall make available, upon request, the name and the amount of monies disbursed to each organization. An organization receiving monies from the fund may be required to submit an annual audit prepared by a certified public accountant, at the discretion of the state treasurer and the Council. The state treasurer and the Council *384 shall review the distribution and expenditure of funds under this Section at least once every three years to ensure funds are disbursed and expended in accordance with the provision of this Section.
H. The secretary may establish rules and regulations to implement the provisions of this Section, including but not limited to rules and regulations governing the collection and disbursement of fees, the transfer and disposition of such license plates, the colors available, and the design criteria.

. Eugene LaMothe and Planned Parenthood of Louisiana were added as plaintiffs to the case subsequent to the interlocutory appeal. Although not named parties to the appeal, we have considered whether these later added plaintiffs have standing to challenge the constitutionality of the Choose Life statute.

. Henderson, et al. v. Stalder, et at, 112 F.Supp.2d 589, 599 (E.D.La.2000).

. Id. at 601.

. This court is obliged to raise the jurisdictional issue of standing sua sponte despite the parties’ failure to raise it. Moreover, the plaintiffs’ skeletal allegations — e.g., that they are state income taxpayers; that Keeler wants to purchase a license plate expressing pro-choice views; and that Loewy’s and La-Mothe’s "religious beliefs are harmed by the statute” — do not require further development in order to assess their standing to challenge the statute.

. The unavailability of a facial challenge does not imply, of course, that an as-applied challenge at some future date after implementation of this statute would be foreclosed.

. Unlike the general test for taxpayer standing, which requires “direct injury” to the taxpayer, See ASARCO, supra, the Supreme Court’s test in Establishment Clause cases requires only income taxpayer status and the showing of a direct expenditure of income tax revenues on the allegedly unconstitutional program. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1962).

. Amended Complaint, ¶ 20.