DENNIS, Circuit Judge,
dissenting:
I respectfully dissent.
This case presents the question of whether a person who claims to have succeeded to a judgment creditor’s interest in a federal court default judgment has standing to enforce the judgment against the judgment debtors. Because I conclude that the plaintiff Cadle has not carried its burden to show that it has a direct concrete interest in the judgment, I must respectfully dissent from the court’s opinion affirming the district court’s judgment. Instead, I would vacate the district court’s judgment and remand the case to it for an *373 evidentiary hearing on the question of Cadle’s standing.
The Supreme Court’s articulation of the “irreducible constitutional minimum” of standing under Article III is straightforward: the first and most important element is that the plaintiff “must have suffered an injury in fact — -an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation marks, footnote, and internal citations omitted). However, as the Supreme Court has recognized, the ability to bring suit is not always limited to the party that suffered the injury; under Vermont Agency of Natural Resources v. United States ex rel. Stevens, an assignee or subrogee of the injured party’s claim may also, in some circumstances, meet the requirements of Article III standing. 529 U.S. 765, 771-74, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); see also APCC Serves., Inc. v. Sprint Comm. Co., 418 F.3d 1238, 1242-43 (D.C.Cir.2005); id. at 1250 (Sentelle, J., dissenting).
The assignee standing doctrine recognized by the Supreme Court clearly refers to an actual assignment of an interest that secures a portion of the recovery. See Vermont Agency, 529 U.S. at 773, 120 S.Ct. 1858 (“The [False Claims Act] can reasonably be regarded as effecting a partial assignment of the Government’s damages claim.”). Vermont Agency requires that the putative plaintiff have “a concrete private interest in the outcome of the suit” in order to attain standing. 529 U.S. at 772, 120 S.Ct. 1858 (quotation marks & brackets omitted) (quoting Lujan, 504 U.S. at 573, 112 S.Ct. 2130). A putative assignee plaintiff must both (1) seek to vindicate the injury to the assignor, and (2) hold an interest “consisting] of obtaining compensation for, or preventing, the violation of a legally protected right.” Vermont Agency, 529 U.S. at 772-73, 120 S.Ct. 1858.
In the present case, the filings of the putative assignee Cadle raise serious doubts that the means by which it purports to succeed to the judgment creditor’s rights actually give it any share in the enforcement of the judgment against the judgment debtors. Indeed, there are several obvious gaps and non-sequiturs in the alleged transfer or assignment of the rights of the judgment creditor, FDIC, to Cadle.
First, Cadle has not demonstrated that it obtained a participation interest in the loan that is enforceable against the judgment debtors, the Neubauers. The documents and affidavit submitted by Cadle with its motion to substitute itself as a party to the registered judgment do not establish a direct connection between Cadle and the original loan, and there are inconsistencies in the documents themselves, some of which reference the loan in question but others of which only use loan numbers that do not always match the loan number on the Arizona judgment.
Second, even if Cadle had shown that it obtained an interest in the loan underlying the Arizona judgment, it has never produced the participation agreement that would govern the rights arising from that loan. A typical participation agreement provides that the participating bank has a right that is enforceable only against the lead bank and not directly against the debtor. Hibernia Nat’l Bank v. FDIC, 733 F.2d 1403, 1407 (10th Cir.1984); see also J. Robert Stoll, et al., Lenders That Serve As Indenture Trustees: A Commercial Banking Perspective, in Practicing Law Institute: Real Estate Law and Practice Course Handbook Series (1990) (“Courts uniformly have concluded that, where the borrower is not a party to the *374 participation agreement, the participant in a typical participation agreement has no direct contractual relationship with, and does not have the rights of a creditor as against, the borrower.”). It is certainly possible that Cadle did acquire a participation interest governed by a participation agreement that gives them an enforceable right against the debtor, but since it has failed to produce the agreement (or even any testimony as to its contents), it has not presented evidence that would contradict the default assumption.
Further, even if Cadle had obtained a participation interest that was enforceable against the Neubauers, the loan likely ceased to exist before (by merger) or after (by discharge) Cadle obtained it. The Arizona judgment was entered two years before Cadle allegedly obtained the 90% participation interest in one of the underlying loans. At that time the loan was merged into the judgment. See 50 C.J.S. Judgments § 704. Cadle has made no showing that it obtained an interest in the judgment itself from the FDIC. Further, in 1998 the FDIC issued an IRS Form 1099— C indicating that, as of December 18, 1998, the debt had been discharged. While this is not dispositive, see, e.g., Owens v. Commissioner of Internal Revenue, 2003 WL 21196200 at *3 (5th Cir. May 15, 2003) (unpublished), Cadle has produced no evidence rebutting the implication that the debt was cancelled at this time.
Standing, of course, is an essential component of federal jurisdiction. A defect in Article III standing is a defect in subject-matter jurisdiction that can be raised by the parties or the court at any time, and a court is required to address such questions when they are present. Henderson v. Stalder, 287 F.3d 374, 379 n. 5 (5th Cir.2002).
The district court considered the Neubauers’ standing objections only very briefly in its opinion dismissing the motion to vacate the substitution order as time-barred, and it appears to have misunderstood the necessary relationship between standing and subject-matter jurisdiction. Thus the standing argument was not fully explored or resolved below. Although we have a responsibility to resolve the question of standing where the record on appeal will allow us to do so, see, e.g., Spenlinhauer v. O’Donnell, 261 F.3d 113, 118 (1st Cir.2001), the record is not sufficiently developed in this case to support this inquiry. We do not have access to all the documents establishing the chain of interest through which the 90% participation interest in the loan passed, nor do we have the participation agreement or any testimony or evidence as to its provisions. This court has not hesitated to remand cases involving standing questions for further fact-finding by the district court when necessary. See, e.g., Martin v. Morgan Drive Away, Inc., 665 F.2d 598, 602 (5th Cir.1982); see also Longmire v. Guste, 921 F.2d 620, 625 (5th Cir.1991); Pelts & Skins, LLC v. Landreneau, 365 F.3d 423, 428 (5th Cir.2004). As in those cases, we should vacate the district court’s judgment and remand for further proceedings.