DENNIS, Circuit Judge,
concurring:
I fully concur in Judge Southwick’s opinion for the court, but also write separately to make a few additional observations. The Louisiana statute that the plaintiffs seek to challenge, La.Rev.Stat. Ann. § 9:2800.12, contains an ambiguity which, although not dispositive, is relevant to the standing and Eleventh Amendment analyses. Judge Southwick’s opinion refrains from addressing this ambiguity, but quite rightly holds that the plaintiffs in this case have standing and that the suit is not barred by the Eleventh Amendment regardless of how the ambiguity should be resolved. However, my agreement with the court’s holdings is strengthened by my understanding of the meaning and effect of § 9:2800.12, which is as follows.
Section 9:2800.12(A) creates a private civil cause of action under which “[a]ny person who performs an abortion is liable to the mother of the unborn child for any damage occasioned or precipitated by the abortion.” The statute does not specify a standard of care; consequently, as Judge Southwick’s. opinion indicates, the statute seems to implicitly impose strict liability, regardless of fault, on health care providers who perform abortions.[1] Further, the statute provides that Louisiana’s statutory regime governing medical malpractice does not apply to actions brought under § 9:2800.12 for damage related to abortions. Id. § 9:2800.12(0(2). However, the statute is silent as to whether a patient who has suffered some harm arising from an abortion can still bring an ordinary medical malpractice action under preexisting law, as with any other medical procedure, or whether such a patient’s only recourse is to bring a strict liability action under § 9:2800.12.
Since § 9:2800.12 is silent on the matter, I believe the Louisiana legislature did not mean to impliedly prevent patients from bringing claims under ordinary medical malpractice law for damages arising from abortions. Indeed, Brittany Prudhome, the former patient who sued K.P., D.B., *126 and Hope Medical for damages arising from an abortion, appears to have sought to bring an ordinary malpractice claim rather than a strict liability claim under § 9:2800.12.[2] Prudhome’s counsel’s letter to LeBlanc, in which she requested that a medical review panel be convened, referred to her claim as a “medical negligence claim” and asserted that K.P., D.B, and Hope Medical “failed to meet the appropriate standard of medical care.” The letter made no mention of strict liability or § 9:2800.12.
The Board, in its response to Prudhome and in its communications with K.P., D.B., and Hope Medical, appears to have taken the position that it must deny health care providers all the benefits of the Louisiana Patients’ Compensation Fund with regard to any claim arising from an abortion, even an ordinary medical malpractice claim. These benefits, as Judge Southwick’s opinion explains, include the convening of medical review panels, the limitation of liability to $100,000, and the ability to self-insure by depositing $125,000 with the Board.
The Board’s denial of these three benefits to K.P., D.B., and Hope Medical (with respect to Prudhome’s claim in particular, and with respect to abortion-related malpractice claims in general) constitutes three concrete and particularized injuries, each of which independently satisfies the injury-in-fact requirement of Article III standing.[3] The Board’s refusal to convene a medical review board has already taken place and, as Judge Southwick’s opinion explains, it is not moot. The denial of a medical review board concretely injured K.P., D.B., and Hope Medical because medical review boards benefit health care providers by facilitating the dismissal of meritless malpractice suits and aiding in the settlement of suits that appear to be meritorious.[4] Although Prudhome’s suit has not yet been resolved, the Board’s apparent policy of refusing to pay abortion-related malpractice claims in excess of $100,000 also causes concrete pecuniary injury to the plaintiffs by effectively raising their cost of obtaining malpractice insurance.[5] See Henderson v. Stalder, 287 F.3d 374, 379 (5th Cir.2002) (“a direct pe *127 cuniary injury” is “an injury in fact”). Likewise, by refusing Patients’ Compensation Fund coverage for all abortion-related malpractice claims, the Board denies K.P., D.B., and Hope Medical the financially beneficial opportunity to self-insure with respect to such claims by depositing $125,000 with the Board. All three of these injuries are concrete and immediate, not abstract or speculative; they plainly fulfill the injury-in-fact requirement. Moreover, the injuries are obviously directly caused by the Board’s decisions, and could be redressed by an injunction requiring the Board to treat abortion-related malpractice claims the same way it treats other malpractice claims.[6] Thus, based on my reading of § 9:2800.12, I conclude that the facts as alleged by the plaintiffs easily fulfill the three requirements of Article III standing.
Regarding the Eleventh Amendment issue, I fully agree with Judge Southwick’s discussion of Ex parte Young and Okpalobi. However, the opinion’s conception of “enforcement” as involving compulsion or constraint seems to me to be unnecessarily restrictive. In a legal sense, to “enforce” a law or regulation simply means “[t]o give force or effect” to it. Black’s Law Dictionary (8th ed.2004). There is no need to ask whether the Board has done anything that amounts to compulsion or constraint. The Board has plainly given force and effect to its interpretation of § 9:2800.12, by refusing to convene a medical review panel and by denying the other benefits of the Fund to K.P., D.B., and Hope Medical. Moreover, the defendants have expressly stated, in a filing in the district court, that the Board has a “gatekeeping function.” Because the Board has actually enforced § 9:2800.12 by engaging in “gatekeeping,” it undeniably has the “connection with the enforcement of the act” that is required under Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
With these observations, I join the court’s opinion.

. A panel of this court previously concluded that the statute provides for strict liability. Okpalobi v. Foster, 190 F.3d 337, 360 (5th Cir.1999), vacated on other grounds, 244 F.3d 405 (5th Cir.2001) (en banc). However, the defendants disagree with this reading and argue that “the statute, read in pari materia with all of Louisiana tort law, requires proof of negligence.” Appellees' Brief 6 n. 3. We do not need to decide on the exact nature or scope of the right of action created by § 9:2800.12(A) in order to resolve the issues presented by this appeal.

. This may well have been a reasonable legal strategy on Prudhome’s part, since the strict liability cause of action under § 9:2800.12(A) may be unconstitutional, as the panel decision in Okpalobi held it was. Okpalobi v. Foster, 190 F.3d 337, 359-60 (5th Cir.1999), vacated on other grounds, 244 F.3d 405 (5th Cir.2001) (en banc). If Prudhome believed she could show that K.P., D.B., and Hope Medical breached the relevant standard of care, then she would not have needed to rely on strict liability in order to recover damages.

. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (explaining that Article III standing requires an "injury in fact” which is "concrete and particularized” and "actual or imminent”).

. See Everett v. Goldman, 359 So.2d 1256, 1264 (La.1978) ("Pretrial screening through a medical review panel is designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case.”). Thus, regardless of whether Prudhome's malpractice claim has any merit, K.P., D.B., and Hope Medical were injured by the Board’s refusal to convene a review panel to assess whether they had violated the relevant standard of care.

. The $100,000 cap on liability for participating health care providers was designed to make malpractice insurance more affordable. See Descant v. Adm'rs of Tulane Educ. Fund, 639 So.2d 246, 248 (La.1994) ("In part, the [Medical Malpractice] Act was designed to increase the likelihood that health care providers would carry malpractice insurance by regulating the total damage recovery of malpractice victims, thereby reducing insurance premiums.”).

. See Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130 (stating that the three elements of Article III standing are injury-in-fact, causation, and redressability).