WOMEN'S EMERGENCY NETWORK,
et al., Plaintiffs,

v.

Fred DICKINSON, et al., Defendants.

No. 02–20172–CIV.

United States District Court,
S.D. Florida.

July 12, 2002.

Brigitte Amri, Priscilla Smith, Hillary Schwab, Louis M. Silber, Silber & Valente, West Palm Beach, FL, for Plaintiff.

Parker D. Thomson, Carol Licko, Hogan & Hartson, L.L.P., Miami, Leon St. John, Palm Beach County Attorney's Office, West Palm Beach, James J. Dean, Messer, Caparello & Self, P.A., Tallahassee, FL, for Defendant.

## *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court upon the State Defendants' Motion for Summary Judgment (DE # 135); Plaintiffs' Motion for Summary Judgment and/or Renewed Motion for Preliminary Injunction (DE # 125); and Defendants–Intervenors' Motion for Summary Judgment (DE # 143).

UPON CONSIDERATION of the motions, the memoranda filed in support and opposition thereof and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order granting the State's motion and the Defendant–Intervenors' motion, but denying Plaintiffs' motion.

### Factual Background

This action challenges the constitutionality of Florida's "Choose Life" specialty license plate scheme, as codified at Fla. Stat. §§ 320.08058(30) and 320.08056(4)(dd) ("the Act"). The Act requires the Department of Highway Safety and Motor Vehicles ("the Department") to create a specialty license plate bearing the message "Choose Life." The Department then charges each consumer who wants to display the specialty plate on his or her automobile an annual use fee of $20. *See* Fla. Stat. § 320.08056(4)(dd). Thereafter, the Department distributes the annual use fees "annually to each county in the ratio that the annual use fees collected by each county bears to the total fees collected for

the plates within the state." Fla. Stat. § 320.08058(30)(b).

The counties then distribute the funds generated from the sale of Choose Life license plates as follows:

> Each county shall distribute the funds to nongovernmental, not-for-profit agencies within the county, which agencies' services are limited to counseling and meeting the physical needs of pregnant women who are committed to placing their children for adoption. Funds may not be distributed to any agency that is involved or associated with abortion activities, including counseling for or referrals to abortion clinics, providing medical abortion-related procedures, or proabortion advertising, and funds may not be distributed to any agency that charges women for services received.

*Id.* Additionally, the Act imposes certain restrictions on the use of the funds once distributed, and requires the recipient agencies to "submit an annual audit, prepared by a certified public accountant, to the county."[1] Fla. Stat. § 320.08058(30)(b)(1)-(3).

Plaintiffs allege that the Choose Life license plates were released to the public in August 2000 and that the Department has distributed more than 34,134 plates generating at least $682,674 in revenue. In August 2001, the Department distributed to counties $426,639.94 in annual use fees generated from the sale of Choose Life license plates from February 2000 through May 2001. Palm Beach and Miami–Dade Counties have not distributed any Choose Life funds, and through their respective counsel, have represented that

they do not intend to do so until the resolution of this case. On the other hand, Hillsborough County has distributed all of the funds received by it under the Choose Life scheme.

Plaintiffs in this action are Women's Emergency Network (WEN), Joshua Becker and Dawn Jackson. WEN is a non-profit agency located in Miami–Dade County that provides services to low-income pregnant women. Specifically, WEN is a telephone referral service made up of volunteers who refer clients to four different clinics for abortions. WEN provides these referrals based upon informal agreements with the clinics and WEN does not audit how its funds are spent. WEN has not applied for funds under the Act, but alleges instead that it would like to apply for and receive funds from Miami–Dade County under the Act. However, WEN acknowledges that it is ineligible to receive funds because it engages in referrals to abortions clinics. WEN presents a facial challenge to the Act under the First Amendment. More specifically, WEN argues that the Act violates its right to free speech by forcing it to choose between speech about abortion and eligibility to receive funds under the Act.

Plaintiffs Joshua Becker and Dawn Jackson are residents and taxpayers in Palm Beach and Leon Counties, respectively. Jackson also pays taxes in Hillsborough County on property that she owns there. Becker and Jackson argue that they have taxpayer standing to challenge the delegation of governmental authority to religious organizations. They further

---

1. Specifically, the Act provides: "Agencies that receive the funds must use at least 70 percent of the funds to provide for the material needs of pregnant women who are committed to placing their children for adoption, including clothing, housing, medical care, food utilities, and transportation. Such funds

may also be expended on infants awaiting placement with adoptive parents." It further provides: "The remaining funds may be used for adoption, counseling, training, or advertising, but may not be used for administrative expenses, legal expenses, or capital expenditures." *See* Fla. Stat. § 320.08058(30)(b).

allege that they have individual standing to assert free speech claims where they are unable to purchase specialty plates expressing their pro-choice views. They argue that while they would like to purchase pro-choice plates, they are unable to do so because the Act discriminates on the basis of viewpoint where it opens a forum for speech about abortion, but only permits the expression of the pro-life view.

Defendants in this action are Fred Dickinson, as Executive Director of the Department (the "State"), and Palm Beach, Miami–Dade and Hillsborough Counties.[2] Additionally, four Defendants recently intervened. Those Defendants are two individuals, Patricia Morris and Edwina Booth, and two organizations, First Care Pregnancy Center ("First Care") and JMJ Life Center ("JMJ").

As stated, Palm Beach and Miami–Dade Counties have not distributed any Choose Life funds. On the contrary, Hillsborough County has distributed all of the funds that it has received under the Choose Life scheme. Specifically, Hillsborough County designated Catholic Charities, Diocese of St. Petersburg, Inc. ("Catholic Charities") as the lead agency or fiscal agent for distribution of Choose Life funds to recipient agencies in Hillsborough County. The County then issued a public notice in an effort to alert qualified agencies of the availability of funds under the Choose Life program. Thereafter, with Catholic Charities acting as the fiscal agent, each qualifying and participating agency in Hillsborough County was allotted an equal amount of the total amount of Choose Life funds received by the County.

Defendants Patricia Morris and Edwina Booth are residents of Palm Beach and Seminole Counties, respectively. They

each purchased a Choose Life specialty license plate as a means of supporting adoption and groups that provide adoption and adoption-related services. They argue that the redress sought by Plaintiffs would serve only to violate their rights to free speech.

Defendants First Care and JMJ are located in Palm Beach and Orange Counties, respectively. They are nongovernmental, non-profit agencies that counsel and meet the physical needs of pregnant women who are committed to placing their children for adoption. Neither agency is involved in or associated with abortion activities. Nor do they counsel or refer abortions, provide medical abortion-related procedures, or advertise in favor of abortions. Accordingly, First Care and JMJ are potential recipients of funds from the "Choose Life" license plate scheme.

In the instant motion, the State moves the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. Likewise, Defendant–Intervenors also move the Court for summary judgment. In support of these motions, the State Defendants and Defendant–Intervenors argue, in part, that Plaintiffs lack standing. The Court agrees that Plaintiffs lack standing and, as such, the State's motion for summary judgment is GRANTED and the Defendant–Intervenors' motion for summary judgment is GRANTED. Plaintiffs' motion for summary judgment is DENIED.

### Summary Judgment Standard

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

---

**2.** Plaintiffs also brought this suit against Jeb Bush, as Governor of the State of Florida. However, Governor Bush's is no longer a party to this action where his Motion to Dismiss was granted.

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than sim-ply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See id.*

### Standing

■ The State Defendants argue, among other things, that they are entitled to summary judgment because Plaintiffs lack standing. Pursuant to Article III, federal courts are confined to adjudicating actual "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. Furthermore, to satisfy Article III's case or controversy requirement, which is the irreducible constitutional minimum of standing, a plaintiff must first demonstrate that he has suffered injury in fact—that is, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Loggerhead Turtle v. County Council of Volusia County, Florida,* 148 F.3d 1231, 1247 (11th Cir.1998) *quoting Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Second, a plaintiff must establish that the injury is fairly traceable to actions of the defendant. *Id.* Third, a plaintiff must show that the injury will likely be redressed by a favorable decision. *Id.*

### Organizational Standing

■ Plaintiff WEN alleges that the Act violates its right to free speech by forcing it to choose between speech about abortion and eligibility to receive funds under the Act. WEN argues that it has not applied to receive funds because such an application would prove futile based upon the express language of the Act. WEN further asserts that a decision in its favor would redress its injury. The Court disagrees.

WEN argues that the Defendants in this case and the panel in *Henderson* mischaracterized the relevant organizational plaintiff's injuries.[3] *Henderson v. Stalder,* 287 F.3d 374 (5th Cir.2002). In support of this argument, they cite the following from Justice Davis' dissent in *Henderson:*

> The plaintiffs are injured by the government's promotion of one side of the debate on the abortion rights issue in a speech forum, coupled with the lack of opportunity to present their opposing view. Under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views

it finds acceptable, but deny use to those wishing to express less favored or more controversial views.... There is an equality of status in the field of ideas, and government must afford all points of view an equal opportunity to be heard.

*Henderson v. Stalder,* 287 F.3d at 387–88 (Davis, J., dissenting) (internal quotations and citations omitted). However, this Court does not conclude that a careful reading of the Florida Act would support such an interpretation. Nothing in the language of the Florida Act prevents Plaintiffs or anyone else from speaking. The Act creates an opportunity for speech. Those who seek a similar or equal opportunity for other speech need only comply with the application requirements presented at Fla. Stat. § 320.08053. Accordingly, where the Act does not limit WEN's speech, the Court concludes that WEN is unable to articulate an injury in fact.

■ The Court also finds that WEN is unable to satisfy the redressability requirement of standing. Specifically, WEN asks this Court to hold that the Act is unconstitutional. Notably, a favorable result for WEN would not present WEN with the opportunity to speak. Instead, this Court agrees with Judge Jones' reasoning in her concurrence in *Henderson* that such a determination would result in the removal of a single speaker—the anti-abortion speaker—from the forum. *Henderson v. Stalder,* 287 F.3d 374, 387 (5th Cir.2002) (Jones, J., concurring). Specifically, Judge Jones provided the following analysis in her concurring opinion:

> Choose Life statutory schemes are not identical, the *Henderson* analysis is highly persuasive for purposes of this discussion given the significant similarities in the statutes. Notably, the Fifth Circuit found that the *Henderson* plaintiffs lacked taxpayer, individual and organizational standing. *Id.* at 379–382.

**3.** In *Henderson,* a case decided on March 29, 2002, the Fifth Circuit reversed a district court's ruling where the lower court preliminarily enjoined the implementation of Louisiana's Choose Life license plate scheme. *Henderson v. Stalder,* 287 F.3d 374 (5th Cir. 2002). While the Florida and Louisiana

Judge Davis's view of standing would transform the First Amendment into a device for censorship rather than the enhancement of free speech. Under traditional free speech jurisprudence, the remedy for a speaker's unjust exclusion from a forum is to admit the speaker, in other words, to afford Keeler access to specialty plates. Judge Davis's acceptance of Keeler's concept of injury would lead instead to the removal of a single speaker—reflecting the anti-abortion viewpoint—from the forum, with no corresponding enlargement of speaking opportunity for Keeler. The "redress" sought by Keeler not only fails to repair her alleged constitutional deprivation, but it would be, as far as I am aware, unique and fundamentally contrary to the law of free speech.

*Id.* (internal citations omitted). This reasoning is highly persuasive. Accordingly, this Court concludes that a favorable outcome for WEN would not only fail to satisfy WEN's alleged constitutional deprivation, it would likewise deprive the current speakers, including Defendants Morris and Booth, of their rights to free speech as secured by the First Amendment.

### *Taxpayer Standing*

Plaintiffs Becker and Jackson assert that they have taxpayer standing to challenge the delegation of governmental authority to religious organizations. They argue that they are injured because county resources must be used to distribute the funds generated from the sale of the Choose Life license plates. They further assert that they have taxpayer standing because the counties use tax dollars to contract with religious organizations in violation of the Establishment Clause.

■ First, the Court determines that Plaintiffs' assertion of taxpayer standing fails where it is predicated, in a generalized fashion, on the notion that county funds are necessarily used to distribute the Choose Life funds. Indeed, no showing has been made to support this contention. Instead, Florida Statute § 320.08056(7) provides that the Department "shall annually retain from the first proceeds derived from the annual use fees collected an amount sufficient to defray each special plate's pro rata share of the department's costs directly related to issuing the specialty plate. Such costs shall include *distribution costs,* direct costs to the department, and any applicable increased costs of manufacturing the specialty license plate." Thus, where the express language of the statute contravenes Plaintiffs' contentions and Plaintiffs fail to make any showing whatsoever that county funds are used to distribute Choose Life funds, the Court rejects Plaintiffs' claims of taxpayer standing based on the counties' alleged use of resources.

■ The Court also rejects Plaintiffs' assertion that they have taxpayer standing because the counties use tax dollars to contract with religious organizations in violation of the Establishment Clause. This Court has not been presented with any evidence to support the notion that any agency appointed to distribute the funds will advance any particular religious ideology. On the contrary, the evidence shows that even Catholic Charities, the proverbial basket in which Plaintiffs place the mass of their eggs, distributed Hillsborough County's funds *equally among all qualified agencies.* There is simply no showing that any regard has been given to religious affiliation. Accordingly, Plaintiffs Becker and Jackson do not establish an injury in fact and they lack standing.

### *Individual Standing*

■ Plaintiffs Becker and Jackson also allege injury because they are unable to

purchase a pro choice license plate. However, the Court determines that Plaintiffs' failure to even apply for the development of a pro choice specialty plate renders their claim unripe for review. Plaintiffs[4] have, for whatever reason, simply failed to attempt to present their view in the specialty plate forum. This case does not present an inequality of status in the field of ideas. Instead, it presents claims by Plaintiffs who seek to sidestep the requirements of justiciability. Curiously, Plaintiffs have failed to heed the guidance offered by Judge Nimmons in *Hildreth* more than two years ago. *Hildreth v. Dickinson*, Case No. 99–583–CIV–J–21–A, 1999 U.S. Dist. LEXIS 22503, at * 16 (M.D.Fla. Dec. 22, 1999). In that case, the Court was presented with challenges to the same Act that is presently before this Court. Judge Nimmons instructed the *Hildreth* plaintiffs that their "failure to request the development of a pro choice license plate pursuant to the applicable statutory mechanism makes Plaintiffs' federal claims unripe for judicial determination." *Id.* It appears that no appeal was taken and despite this unequivocal language from the Court, Plaintiffs in this case have too chosen not to apply for the development of a pro choice license plate. While Plaintiffs may believe that application for a specialty plate is unnecessary or that such an application may be futile, this argument was also rejected by Judge Nimmons. Specifically, Judge Nimmons stated:

> Plaintiffs argue that, even if they meet the statutory requirements, there is still no guarantee that the Legislature will approve their plate. Thus, requiring them to comply with the statute would be fruitless. This argument suggests that the Court entertain a conjectural or

hypothetical injury. The Court will not do so. Plaintiffs' suggestion that the current political climate does not augur well for the passage of a pro choice license plate law is legally speculative. Since the inability to acquire their desired specialty plate is purely conjectural, so too is any alleged resultant injury.

*Hildreth*, 1999 U.S. Dist. LEXIS 22503, at * 16–17. Whatever Plaintiffs' reasons for failing to apply for the development of a pro choice specialty plate, that failure is fatal to Plaintiffs' claims where it renders them unripe for judicial review.

### Conclusion

In sum, the Court determines that Plaintiffs do not have standing to assert the challenges presently before the Court. Thus, the Court need not determine whether, pursuant to the unconstitutional conditions doctrine, the Act impermissibly infringes on Plaintiffs' constitutionally protected rights to free speech. *But see Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). Furthermore, the State Defendants' and Defendant–Intervenors' motions for summary judgment are GRANTED. Accordingly, it is

ORDERED AND ADJUDGED that the State Defendants' Motion for Summary Judgment (DE # 135) is GRANTED.

IT IS FURTHER ORDERED that Defendant–Intervenors' Motion for Summary Judgment (DE # 143) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment and/or Renewed Motion for Preliminary Injunction (DE # 125) is DENIED.

---

4. To the extent that WEN asserts this challenge, the analysis that follows is applicable to that Plaintiff as well.

**1316**

The Clerk is directed to CLOSE this case. All pending motions not otherwise ruled upon are DENIED as MOOT.