323 F.3d 937
 WOMEN'S EMERGENCY NETWORK, Joshua Becker, et al., Plaintiffs-Appellants,
v.
Jeb BUSH, Governor, in his official capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles, Palm Beach County, Florida, on behalf of itself and all other Florida counties, et al., Defendants-Appellees,
Patricia Morris, Edwina Booth, et al., Intervenor-Defendants-Appellees.
 No. 02-13981.
 United States Court of Appeals, Eleventh Circuit.
 March 7, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Priscilla J. Smith, Brigitte Amiri, Hillary Schwab, Center for Reproductive Law & Policy, New York City, Louis M. Silber, Silber & Valente, West Palm Beach, FL, for Plaintiffs-Appellants.
 Carol A. Licko, Parker D. Thomson, Hogan & Hartson, LLP, Miami, FL, Erik W. Stanley, Matthew Duane Staver, Liberty Counsel, Longwood, FL, James Joseph Dean, Messer, Caparello & Self, P.A., Tallahassee, FL, for Appellees.
 Steven Werner Fitschen, Nat. Legal Foundation, Virginia Beach, VA, for Amicus Curiae, Nat. Legal Foundation.
 Appeal from the United States District Court for the Southern District of Florida.
 Before DUBINA and BLACK, Circuit Judges.*
 BLACK, Circuit Judge:
 
 
 1
 Appellants Women's Emergency Network (WEN), Joshua Becker, and Dawn Jackson appeal the district court's dismissal of their First Amendment claims against Appellees for lack of standing. See Women's Emergency Network v. Dickinson, 214 F.Supp.2d 1308 (S.D.Fla.2002); Women's Emergency Network v. Bush, 214 F.Supp.2d 1316 (S.D.Fla.2002). Appellants challenge the State of Florida's authorization of specialty license plates bearing the message "Choose Life," as well as the State's disbursal of funds generated from the sale of Choose Life plates to organizations that provide adoption services, pursuant to Fla. Stat. § 320.08058(30). We agree with the district court that Appellants lack standing to bring their constitutional challenges to the Florida statute, and we therefore affirm the district court's opinions.
 
 I.
 
 2
 Appellants brought this suit against Florida Governor Jeb Bush, Executive Director Fred Dickinson of the Florida Department of Highway Safety and Motor Vehicles (the Department), and several Florida counties[1], seeking a temporary restraining order and/or a preliminary injunction restraining Appellees from distributing funds pursuant to Fla. Stat. § 320.08058(30) (the Act); an injunction preventing Appellees from enforcing the Act and a declaration that the Act is unconstitutional; an injunction preventing the counties from distributing funds raised under the Act based on the viewpoint of the recipient; and an injunction preventing the counties from delegating their duty of administering the funds to religious organizations. The challenged statute, which creates a specialty license plate bearing the message "Choose Life," was enacted under Florida's specialty license plate program, Fla. Stat. § 320.08053.
 
 
 3
 The State of Florida currently authorizes the distribution of at least 38 specialty license plates. See Fla. Stat. § 320.08058(1)-(38) (2002). The process by which an organization can obtain a specialty license plate is spelled out in Fla. Stat. § 320.08053. An interested organization must submit to the Department (1) a request for the specialty plate, including a general description of the plate, (2) a scientific survey indicating that at least 15,000 Floridians intend to purchase the specialty plate, (3) an application fee, not to exceed $60,000, to defray the costs incurred by the Department in the review of the application and the development of the plate, and (4) a marketing strategy describing the marketing plans for the plate and outlining the anticipated revenues and planned expenditures of the revenues generated by the plate. Id. § 320.08053(1). If the sponsoring organization satisfies these requirements, the Department submits the plan to the Florida legislature, which has unfettered discretion to enact a law authorizing the specialty plate, or to reject the plan in toto. Id. § 320.08053(2).
 
 
 4
 In 1999, Choose Life, Inc., an organization committed to the promotion of alternatives to abortion, satisfied the requirements for a specialty license plate, and the Department submitted the plan to the legislature for approval. A senator offered an amendment to the bill that would have created a second specialty license plate bearing the message "Pro Choice," with proceeds to be distributed to any reproductive services organization, including those involved or associated with abortion activities. The amendment was rejected by a vote of 23 to 14. The Choose Life plate legislation passed, and the plan was codified as Fla. Stat. § 320.08058(30).
 
 
 5
 Florida motorists may purchase a Choose Life license plate by paying a $20 annual use fee above the standard license plate fee. By the terms of the Act, the annual use fees must first be used to defray the administrative expenses incurred by the Department in the development and distribution of the plates, and must then be distributed by the Department to Florida counties, in proportion to the number of purchasers of the plate in each county. The counties must then distribute the funds to agencies within the counties that satisfy the statutory criteria. Id. § 320.08058(30)(b). Eligible agencies must provide counseling or other services to "[meet] the physical needs of pregnant women who are committed to placing their children for adoption." Id. The agencies must spend at least 70% of the funds on clothing, housing, medical care, food, utilities, transportation, or other material needs of pregnant women. The funds may also be used to fund the care of babies waiting to be adopted. Id. § 320.08058(30)(b)(1). Funds generated from the sale of "Choose Life" plates may not be distributed to agencies "involved or associated with abortion activities, including counseling for or referrals to abortion clinics, providing medical abortion-related procedures, or pro-abortion advertising." Id. § 320.08058(30)(b).
 
 
 6
 Once the Department distributes funds to the counties, the counties have the sole authority to decide which agencies within the counties are qualified and will receive the Choose Life funds. Id. The Act does not limit the ability of the counties to contract with other organizations to make these decisions. Indeed, this is what most counties have done, or at least have evidenced an intent to do.[2]
 
 
 7
 Appellants filed this lawsuit in the Southern District of Florida on January 16, 2002, challenging the constitutionality of Florida's Choose Life license plate statute, Fla. Stat. § 320.08058(30).[3] Appellants contend the statute violates their First Amendment right to freedom of speech by providing a forum for pro-life car owners to express their political views but not providing a similar forum for pro-choice car-owners, and by authorizing the distribution of funds in a manner that discriminates based on the viewpoint of the agency applying for the funds. Appellants also claim the statute violates their rights under the Establishment Clause by creating excessive entanglement with religion by preferring one religion over others and by delegating an important governmental function to religious organizations. Appellants further contend the statute violates their right to due process under the Fourteenth Amendment; they assert the statute conditions the receipt of funds on criteria so vague that it encourages discriminatory disbursements of money and fails to give applicants fair notice of what speech renders them ineligible for funds.[4] The District Court dismissed Appellants' claims against Appellees Dickinson and the Florida counties in an order dated July 12, 2002, finding Appellants lacked standing to bring their claims. Women's Emergency Network v. Dickinson, 214 F.Supp.2d 1308 (S.D.Fla.2002). The court also granted Appellee Bush's motion for summary judgment, finding he was not a proper party to the suit. Women's Emergency Network v. Bush, 214 F.Supp.2d 1316 (S.D.Fla.2002).
 
 II.
 
 8
 Article III of the United States Constitution authorizes the courts to decide cases only where there is a justiciable case or controversy. U.S. CONST. art. III, § 2, cl. 1; Ala. Power Co. v. U.S. Dep't of Energy, 307 F.3d 1300, 1308 (11th Cir.2002). Perhaps the most fundamental doctrine that has emerged from the case-or-controversy requirement is that of standing. Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); Ala. Power Co., 307 F.3d at 1308. The Supreme Court has articulated for us a three-part test to determine whether a party to a lawsuit has standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). A plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. Id.; Ala. Power Co., 307 F.3d at 1308-09.
 
 
 9
 Courts have traditionally recognized at least three distinct forms of standing: taxpayer standing, see Doremus v. Bd. of Educ. of Hawthorne, 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952), individual standing, see Lujan, 504 U.S. at 560, 112 S.Ct. at 2136, and organizational standing, see Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). We will address Appellants' claims under each basis for standing.
 
 1. Taxpayer Standing
 
 10
 Appellants Becker and Jackson claim their counties of residence violated their First Amendment rights as taxpayers by using county funds to coordinate and oversee the distribution of Choose Life funds to organizations providing adoption services.[5] Specifically, Appellant Becker claims the use of county funds to negotiate a contract with Catholic Charities, a religious organization, violates his rights under the Establishment Clause by delegating an important discretionary government function to a religious organization. See Larkin v. Grendel's Den, Inc., 459 U.S. 116, 122, 103 S.Ct. 505, 509-10, 74 L.Ed.2d 297 (1982).
 
 
 11
 Ordinarily, state taxpayers lack a sufficiently personal interest to challenge laws of general applicability, since their injury is not significantly different from that suffered by taxpayers in general. ASARCO Inc. v. Kadish, 490 U.S. 605, 613-14, 109 S.Ct. 2037, 2043, 104 L.Ed.2d 696 (1989) (plurality opinion). To have standing to challenge the constitutionality of a state law, a taxpayer "must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." Doremus, 342 U.S. at 434, 72 S.Ct. at 397 (quoting Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). The analysis changes, however, when a taxpayer challenges a statute under the Establishment Clause. Rather than requiring a "direct injury," we only require a plaintiff to demonstrate a logical link between his taxpayer status and the challenged legislative enactment, and a nexus between his taxpayer status and the precise nature of the alleged constitutional infringement. Flast v. Cohen, 392 U.S. 83, 102-03, 88 S.Ct. 1942, 1954, 20 L.Ed.2d 947 (1968). Becker satisfies this relaxed criteria: he is a resident of Palm Beach County, he pays taxes to the county, and Palm Beach County has expended municipal funds in the contemplation and negotiation of a contract with Catholic Charities.[6]
 
 
 12
 There is nothing inherently unconstitutional, however, in the use of county tax dollars to distribute funds from the sale of license plates. In fact, we find it difficult to ascertain what Becker must assert to state a viable Establishment Clause claim. In a case similar to ours, the Fifth Circuit recently held that a plaintiff challenging Louisiana's Choose Life license plate legislation failed to articulate an injury where there was "no allegation that the [distributors of the funds] have yet distributed any money from the Choose Life Fund or that in so doing, or contemplating distributions, they have actually advanced the religious ideologies of their respective organizations or religion in general." Henderson v. Stalder, 287 F.3d 374, 380 (5th Cir.2002). The district court in the present case applied the same standard, dismissing Becker's claims after finding no "evidence to support the notion that any agency appointed to distribute the funds will advance any particular religious ideology." Dickinson, 214 F.Supp.2d at 1314.
 
 
 13
 Becker contends the Fifth Circuit and the district court applied the wrong test to determine whether Palm Beach County violated his rights under the Establishment Clause. He argues we are bound by the Supreme Court's decision in Larkin v. Grendel's Den, in which the Court considered the constitutionality of a delegation of power by the Commonwealth of Massachusetts to churches and schools in Massachusetts to veto applications for liquor licenses at properties located within close proximity to the churches or schools. 459 U.S. at 117, 103 S.Ct. at 507. The Court found the delegation of power to be unconstitutional, noting, "The churches' power under the statute is standardless, calling for no reasons, findings, or reasoned conclusions. That power may therefore be used ... for explicitly religious goals...." Id. at 125, 103 S.Ct. at 511. The Court concluded, "[the statute] substitutes the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications." Id. at 127, 103 S.Ct. at 512. Appellant contends Palm Beach County violated the Establishment Clause by negotiating a contract with Catholic Charities, a religious organization, thereby delegating an important discretionary governmental function to a religious organization, just as Massachusetts delegated its licensing power to the churches in Larkin.
 
 
 14
 Even if Becker is correct that the formation of a contract between Palm Beach County and Catholic Charities might violate the Establishment Clause under Larkin, he still fails to satisfy Lujan's injury-in-fact requirement. 504 U.S. at 560-61, 112 S.Ct. at 2136. It is the formation of a contract that creates a potential Establishment Clause issue, not the negotiation of a contract. Becker contends Palm Beach County violated his rights as a taxpayer by expending county funds to negotiate a distribution contract with Catholic Charities. This is nothing more than a speculative injury, insufficient to satisfy Lujan's injury-in-fact requirement.[7] Palm Beach County has not entered any agreement with Catholic Charities. Neither the county nor Catholic Charities has distributed funds received pursuant to Fla. Stat. § 320.08058(30). This is the crux of Becker's standing problem: we cannot determine whether Palm Beach County's distribution contract with Catholic Charities violates the Establishment Clause because there is no contract. There is nothing unusual or unconstitutional about the use of county funds to negotiate a contract that may or may not come to fruition.[8] Becker's Establishment Clause claims against Palm Beach County must fail for lack of standing.
 
 2. Individual Standing
 
 15
 Appellants Becker and Jackson claim the State of Florida violated their First Amendment rights by providing a public forum for pro-life car owners to express their political views but not providing a similar forum for pro-choice car owners.[9] The district court granted the State's motion for summary judgment after determining Appellants' claims were not ripe for review.[10] Dickinson, 214 F.Supp.2d at 1315. Specifically, the court found Appellants failed to "attempt to present their view in the specialty plate forum" by applying for a license plate bearing a message concerning their political views, and therefore should not be permitted to levy a First Amendment challenge against Fla. Stat. § 320.08058(30).[11] Id. We agree with the district court.
 
 
 Injury-in-Fact
 
 
 16
 To establish individual standing, a plaintiff must first demonstrate that he suffered an injury-in-fact as a result of the defendant's conduct. Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136. The injury alleged by Appellants is not easily defined, a problem that caused the Fifth Circuit some consternation in Henderson. See 287 F.3d at 384-92 (Jones, J., concurring and Davis, J., dissenting) (defining pro-choice plaintiffs' injuries differently). The majority in Henderson characterized Appellants' alleged injury as the State's denial of Appellants' "opportunity to express [their] pro-choice point of view." Id. at 381. Appellants would rather we define their injury as "the government's promotion of one side of the debate on the abortion rights issue in a speech forum, coupled with the lack of opportunity to present their opposing view." Id. at 387 (Davis, J., dissenting). The problem with Appellants' argument is that it presumes the State has done more than it actually has done. Has the State of Florida authorized the speech of one side of the abortion debate? Of course. Has the State denied the other side of the debate the same opportunity to speak? Not at all. The First Amendment does not require states to authorize the speech of those who have expressed no interest in speaking; it only protects the rights of those who wish to speak. The State of Florida has not denied Appellants access to the specialty license plate forum.[12] It has not rejected Appellants' application for a specialty license plate, and it has not applied Fla. Stat. § 320.08053 in a discriminatory manner. Until it does so, Appellants have not suffered an injury-in-fact, and they lack standing to bring their claim.
 
 
 17
 Appellants point to a line of Supreme Court cases that have allowed plaintiffs subject to speech-restrictive laws to challenge the laws without applying for and being denied an opportunity to speak. See Watchtower Bible & Tract Soc. of N.Y., Inc. v. Village of Stratton, 536 U.S. 150, 122 S.Ct. 2080, 2084, 153 L.Ed.2d 205 (2002); City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56, 108 S.Ct. 2138, 2142-43, 100 L.Ed.2d 771 (1988); Shuttlesworth v. Birmingham, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). All of these cases involve restrictions or prohibitions on speech by the government. In Watchtower, a municipal statute prohibited canvassing without first obtaining a permit. 122 S.Ct. at 2083. In Lakewood, an ordinance required mayoral approval for placing newsracks. 486 U.S. at 753, 108 S.Ct. at 2142. In Shuttlesworth, an ordinance prohibited public demonstration without a permit. 394 U.S. at 149-50, 89 S.Ct. at 937-38. In all three cases, the constitutional challenge was to the government program that created the speech forum, not to the state's authorization of the use of the forum by a third party. If Appellants were challenging Fla. Stat. § 320.08053, the statute that creates the forum, the Lakewood line of cases might be relevant. Appellants' only challenge, though, is to the Choose Life statute, Fla. Stat. § 320.08058(30). The Choose Life statute does not in any way restrict or prohibit Appellants' speech. Nothing in the Choose Life statute prevents Appellants from applying for or gaining entrance to the specialty license plates forum. The First Amendment protects the right to speak; it does not give Appellants the right to stop others with opposing viewpoints from speaking.
 
 
 Redressability
 
 
 18
 Appellants fare no better in their attempt to establish the third element of standing, that it is likely the alleged injury will be redressed by a favorable ruling from this court. Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136. As we have explained above, the only cognizable injury Appellants could allege is that the State denied them an opportunity to assert their pro-choice point of view. The relief requested by Appellants, an injunction against the enforcement of Fla. Stat. § 320.08058(30), would not remedy this alleged injury. Removing pro-life speech from the forum does not in any way advance Appellants' opportunity to speak.
 
 
 19
 To remedy Appellant's alleged injury, we would need either to instruct the State to create a pro-choice license plate, or instruct the State to close the specialty license plate forum altogether. As explained above, the First Amendment does not require the State to facilitate Appellants' speech where they have not requested the opportunity to speak, and we will not instruct the State to exceed the requirements of the First Amendment. Furthermore, we will not instruct the State to close the entire specialty license plate forum because Appellants have not challenged the entire forum. Their challenge was to the Choose Life statute, Fla. Stat. § 320.08058(30), not the specialty license plate program, Fla. Stat. § 320.08053. Appellants' alleged injury therefore is not redressable by a decision of this court, and Appellants lack standing to bring their claims.
 
 3. Organizational Standing
 
 20
 Appellant WEN claims the State of Florida violated its First Amendment rights by authorizing the distribution of Choose Life funds in a manner that discriminated based on the viewpoint of the agency applying for the funds.[13] WEN is a non-profit organization that counsels women about pregnancy options, including both adoption and abortion, and funds abortions for indigent women. WEN has never applied for Choose Life funds. It claims that it would like to do so, even if only to fund its adoption services, but knows that its current organizational structure would render it ineligible under the terms of the Act. The district court dismissed WEN's claim for lack of standing, finding nothing in Fla. Stat. § 320.08058(30) prevents WEN from speaking, and even if it did, WEN's requested relief, a declaratory judgment that the statute is unconstitutional, would not redress WEN's injury. Dickinson, 214 F.Supp.2d at 1313-14. WEN contends the district court erred by mischaracterizing its injury as an inability to receive funds rather than as impermissible viewpoint discrimination. WEN contends this injury is redressable by the restoration of a level playing field, even if that means the elimination of the entire funding program. Alternatively, the injury could be redressed by severing the part of the statute that prevents abortion agencies from receiving Choose Life funds.
 
 
 21
 WEN's "level playing field" argument fails because it does not accurately reflect the law of this circuit. WEN relies heavily on the dissent in Henderson, which argued that plaintiffs should have standing where the relief sought would "prevent[] the State from manipulating the content of public debate by presenting only the view favored by the state." 287 F.3d at 390. The "level playing field" analysis is simply not consistent with First Amendment law. The proper remedy for Appellant's alleged injury would be to make funds available to WEN, not to take funds from adoption agencies. See, e.g., Rosenberger v. Rector of the Univ. of Va., 515 U.S. 819, 828-30, 845-46, 115 S.Ct. 2510, 2516-17, 2524-25, 132 L.Ed.2d 700 (1995) (holding proper remedy when a Christian student newspaper was denied student activities funds was to make funds available to the religious paper, not to deny funds to non-religious student groups); Henderson, 287 F.3d at 387 (Jones, J., concurring). The First Amendment is intended to protect speech, not censor it. WEN would have no more access to government funds if we enjoined Fla. Stat. § 320.08058(30) than it does now. An injunction would not redress Appellant's injury.
 
 
 22
 WEN's alternative argument, although sound in principle, fails in application. WEN contends that severing the portion of Fla. Stat. § 320.08058(30) that prevents agencies associated with abortion activities from receiving funds would remedy its alleged injury, and would also protect adoption agencies' right to seek funds. However, on the facts of this case, the discriminatory language in § 320.08058(30) is not severable under Florida law. Florida law requires a four-part analysis to determine whether a portion of a statute is severable. Fla. Outdoor Adver., LLC v. City of Boynton Beach, 182 F.Supp.2d 1201, 1209-10 (S.D.Fla.2001). We must consider whether: "(1) the unconstitutional provisions [of the act] can be ... separated from the remaining valid provisions; (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other; and (4) an act complete in itself remains after the invalid provisions are stricken." Id. The first and fourth factors are clearly satisfied in this case, as they would be in almost any case. WEN argues the second factor is satisfied because adoption agencies would still receive funding even if abortion agencies were given a place at the table. This argument ignores the fact that the legislative purpose of the act is to promote adoption in lieu of abortion.[14] Making Choose Life funds available to abortion agencies would fundamentally contradict the legislative purpose of the act.
 
 
 23
 Furthermore, concerning the third factor, we can say with almost complete certainty that the Florida legislature would not have passed the Choose Life statute if it thought money generated from the sale of Choose Life plates would be used to sponsor or fund abortions. Removing the discriminatory portion of the act fundamentally changes the purpose of the act; it therefore cannot be severed under Florida law. WEN's injury is not redressable by the relief requested. We therefore conclude the district court properly dismissed WEN's claims for lack of standing.
 
 III.
 
 24
 Because we affirm the district court's denial of Appellants' claims for lack of standing, Appellants' claims against Governor Bush are moot. Regardless, the district court's dismissal of Governor Bush as a defendant to the lawsuit was proper. The district court determined Governor Bush is not a proper party under this Court's interpretation of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), because he is not the "head" of the Florida Department of Highway Safety and Motor Vehicles. Bush, 214 F.Supp.2d at 1318. Rather, the Governor and the cabinet are jointly responsible for the Department. Id.; Fla. Stat. § 20.24. Appellants contend this finding was improper because the law of this Circuit permits the inclusion of a governor in a suit where the governor is responsible for the enforcement of a challenged law.
 
 
 25
 The controlling case on this issue is Luckey v. Harris, 860 F.2d 1012, 1015-16 (11th Cir.1988). In Luckey, this Court interpreted Ex Parte Young to permit suits against state officers only when those officers are "responsible for" a challenged action and have "some connection" to the unconstitutional act at issue. Id. Governor Bush's only connection with Fla. Stat. § 320.08058 is that he, along with six members of the cabinet, are responsible for the Department of Highway Safety and Motor Vehicles. Governor Bush's shared authority over the Department is simply too attenuated to establish that he is "responsible for" the distribution of funds to adoption agencies.
 
 
 26
 Appellants also contend Bush is a proper party because, as governor, he is responsible for the enforcement of § 320.08058(30). A governor's "general executive power" is not a basis for jurisdiction in most circumstances. See Harris v. Bush, 106 F.Supp.2d 1272, 1276-77 (N.D.Fla.2000) (citing multiple cases supporting this principle). If a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant. Id. at 1277. Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction. Id.
 
 
 27
 Appellants further contend Governor Bush is a proper party because he signed Fla. Stat. § 320.08058 into law. This argument, too, must fail. Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law. Supreme Ct. of Va. v. Consumers Union of United States, Inc., 446 U.S. 719, 731-34, 100 S.Ct. 1967, 1974-76, 64 L.Ed.2d 641 (1980).
 
 IV.
 
 28
 Appellants have failed to demonstrate they have standing to challenge Fla. Stat. § 320.08058(30). The district court properly granted Appellees' motions for summary judgment, and properly dismissed Governor Bush as a party to this litigation.
 
 
 29
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 This case is being decided by a quorum of the judges who sat for oral argument. During oral argument, Judge Kenneth L. Ryskamp, United States District Judge for the Southern District of Florida, sitting by designation, discovered that he should recuse himself from consideration of this appeal. Under such circumstances, it is appropriate for the remaining members of the court to fulfill their responsibility to consider the appeal if they can reasonably do soSee 11th Cir. R. 34-2; Fed. Sav. & Loan Ins. Co. v. D & D Golfview Props., Inc., 874 F.2d 1509 (11th Cir.1989).
 
 
 [1]
 Which counties are still involved in this appeal is somewhat unclear from the record. At one time, Miami-Dade, Palm Beach, and Hillsborough counties were all named as defendants in this suit. The parties stipulate that Hillsborough County has been dismissed from this appeal. The parties also agree that Palm Beach County is still involved in this appeal. Appellees claim that, pursuant to an agreement between the parties, Miami-Dade County is an appellee for jurisdictional purposes only. Appellant asserts Miami-Dade is still a party to the appeal, but concedes the county has not distributed any funds dispersed under the Act, or contracted with any religious agency to distribute its funds
 
 
 [2]
 For example, Palm Beach County's commissioners voted to contract with Catholic Charities, a religiously-oriented charitable organization, to distribute the county's Choose Life funds. When this litigation was filed, the commissioners ceased their negotiations with Catholic Charities, and no distribution contract has ever been finalized by Palm Beach County
 
 
 [3]
 Appellant WEN is an organization that caters to the needs of pregnant women. It refers clients to abortion agencies or adoption agencies, depending on the stated interest of the women. Appellant Becker is a resident of Palm Beach County, Florida. He has attempted to purchase a pro-choice license plate from the State of Florida, but has never applied for a pro-choice specialty plate. Appellant Jackson is a resident of Hillsborough County, Florida. She also would like to purchase a pro-choice license plate, but has not applied for the creation of one
 
 
 [4]
 Although Appellants raise this concern in their original complaint, they have not made any due process arguments on appeal. We therefore consider this claim to be abandonedUnited States v. Ardley, 242 F.3d 989, 990 (11th Cir.2001).
 
 
 [5]
 Appellant Jackson's claim against Hillsborough County, her county of residence, disappeared when Hillsborough County was dismissed as a party to this appeal. We therefore confine our analysis in the remainder of this section to Appellant Becker's claims against Palm Beach County, his county of residence
 
 
 [6]
 Pursuant to the terms of Fla. Stat. § 320.08056(7), the costs incurred by the Department in the issuance of the Choose Life plate must be offset by annual use fees collected from the sale of the plates before the remainder of the fees are distributed to the counties. There is no provision, however, to enable the counties to use a portion of the funds to offset the costs of distributing the funds to adoption-related organizations. Any costs incurred by the counties, including those incurred in negotiating a contract with a third party such as Catholic Charities, must be absorbed by the county
 
 
 [7]
 At the time this litigation was filed, the commissioners of Palm Beach County had voted to negotiate a contract with Catholic Charities to disburse their Choose Life funds. Upon learning of the lawsuit, the county halted its negotiations. This evidence is insufficient to prove that the formation of a contract between the county and Catholic Charities was inevitable. The parties to the potential contract had not yet begun to negotiate the contract, and once a final agreement was reached, the county commissioners would have had the power to approve or reject it. The formation of the contract was still speculative; therefore, Becker's articulated injury was speculative as well
 
 
 [8]
 Furthermore, the applicability ofLarkin to this case is unclear. The churches in Larkin enjoyed veto power unconstrained by statute; indeed, it was the lack of constraint that created the Establishment Clause concern. In this case, the power exercised by Catholic Charities in distributing the Choose Life funds is at least partially constrained. Fla. Stat. § 320.08058(30)(b) authorizes Florida counties (or other organizations exercising power delegated by the counties) to "distribute the funds to nongovernmental, not-for-profit agencies within the county" that provide the requisite adoption services. Under the terms of the statute, Catholic Charities would not be required to distribute funds to all eligible agencies; distributors have considerable discretion in choosing which agencies will receive funds. If Palm Beach County ultimately enters into a contract with Catholic Charities, however, it might further constrain the distributor's discretion in order to avoid the problem addressed in Larkin. For now, we simply observe that Palm Beach County has not delegated any decision-making power to Catholic Charities.
 
 
 [9]
 Appellees suggest the message on Florida's Choose Life license plates might be government speech rather than private speech. If this were the case, the First Amendment would have little effect; the State's speech, no matter how one-sided, would be constitutionally legitimate as long as the State did not "abridge an individual's `First Amendment right to avoid becoming the courier for such message.'"NAACP v. Hunt, 891 F.2d 1555, 1566 (11th Cir.1990) (quoting Wooley v. Maynard, 430 U.S. 705, 717, 97 S.Ct. 1428, 1436, 51 L.Ed.2d 752 (1977)). If the message on a license plate is private speech, however, the First Amendment significantly constrains the State's ability to regulate the speech. Id. at 1565. While none of the specialty plates listed in Fla. Stat. § 320.08058 represent issues with which we think the State of Florida would disagree, neither do they universally concern issues of the greatest importance to the State. Furthermore, the program is structured to benefit the organizations that apply for and sponsor the plates, not the State itself. We fail to divine sufficient government attachment to the messages on Florida specialty license plates to permit a determination that the messages represent government speech. See Maher v. Roe, 432 U.S. 464, 474, 97 S.Ct. 2376, 2383, 53 L.Ed.2d 484 (1977).
 
 
 [10]
 This case presents a classic example of the overlap between the justiciability doctrines of ripeness and standingSee generally Erwin Chemerinsky, Federal Jurisdiction 114-17 (3d ed.1999); see also Sierra Club v. Morton, 405 U.S. 727, 731-32, 92 S.Ct. 1361, 1364-65, 31 L.Ed.2d 636 (1972). The district court dismissed Appellants' claims as unripe because they alleged an injury that had not yet occurred, and the case was therefore premature for review. The court could just have easily concluded that Appellants failed to satisfy the injury-in-fact requirement in the standing doctrine. Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136. Because the parties have addressed this issue under Lujan rather than under Sierra Club, we will do the same. It should be noted, however, that the district court's decision could be affirmed on ripeness grounds as well as on standing grounds.
 
 
 [11]
 Appellants were counseled in a previous incarnation of this case to apply for a specialty license plate before bringing a First Amendment challenge to Fla. Stat. § 320.08058(30)Hildreth v. Dickinson, No. 99-583-CIV-J-21-A, slip op. at 1 (M.D.Fla. Dec. 22, 1999). Rather than appealing the district court's admonition, Appellants chose to try again in this case.
 
 
 [12]
 Appellants contend the State excluded them from the forum by rejecting a proposed amendment to Fla. Stat. § 320.08058(30) that would have created a pro-choice license plate, with proceeds to be distributed to agencies associated with abortion as well as adoption. We are not in a position to determine why the Florida legislature rejected the amendment, and we can think of several non-discriminatory reasons that it might have done so. For example, the legislature might have been concerned about the precedential effect of creating specialty license plates for interests that have not satisfied the application requirements of Fla. Stat. § 320.08053. We find no clear evidence that the legislature intended to exclude pro-choice groups from the specialty license plate forum by rejecting the amendment to the Choose Life bill. Rather, the Legislature simply chose not to offer one interest special treatment by granting it a specialty license plate outside the requirements of the licensing scheme
 
 
 [13]
 An organization has standing to sue on its own behalf if it meets the standing requirements applicable to individualsHavens Realty Corp. v. Coleman, 455 U.S. 363, 378-79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982).
 
 
 [14]
 The law is well established that states do not violate the Constitution by expressing a preference for normal childbirth over abortionSee Webster v. Reproductive Health Servs., 492 U.S. 490, 511, 109 S.Ct. 3040, 3053, 106 L.Ed.2d 410 (1989).